## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

FISHER ISLAND CLUB, INC., a Florida not-for-profit corporation, and FISHER ISLAND HOLDINGS, LLC, a Florida limited liability company,

      Plaintiffs,

vs.

ARBOLEYA SULICHIN INTERNATIONAL MARKETING, LLC, a Florida limited liability company, BLUMAR MEDIA, INC., a Florida for profit corporation,  SILVIO SULICHIN, individually, and MINERVA ARBOLEYA, individually,

      Defendants.

_____/

### <u>COMPLAINT</u>

Plaintiffs, FISHER ISLAND CLUB, INC. ("Fisher Island Club"), a Florida not-for-profit corporation and FISHER ISLAND HOLDINGS, LLC ("Fisher Island Holdings"), a Florida limited liability company (collectively "Plaintiffs"), bring this action for  Federal Trademark infringement, false designation of origin, violation of the Anti-Cybersquatting Consumer Protection Act, declaratory judgment as to ownership of a trademark, Florida Common Law trademark infringement, and Florida Common Law breach of contract, against Defendants ARBOLEYA SULICHIN INTERNATIONAL MARKETING, LLC, an administratively dissolved Florida limited liability company ("ASI"),  BLUMAR MEDIA, INC., an administratively dissolved Florida for profit corporation ("Blumar"), SILVIO SULICHIN

("Sulichin"), individually, and MINERVA ARBOLEYA ("Arboleya"), individually, (collectively "Defendants" ) and, in support thereof, state as follows:

**PARTIES**

1.      Fisher Island Club is a not-for-profit corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

2.      Fisher Island Holdings is a Florida limited liability company, with its principal place of business in Miami-Dade County, Florida.

3.      ASI is an administratively dissolved Florida limited liability company with its principal place of business in Miami-Dade County, Florida.  On information and belief, ASI formerly purported to do business as "ASI Marketing LLC," despite the fact that such entity never existed and, in any event, was not registered to or connected with Sulichin and/or Arboleya.

4.      Blumar is an administratively dissolved Florida for-profit corporation, with its principal place of business in Miami-Dade County, Florida, and is, upon information and belief, the current publisher of FISHER MAGAZINE.

5.      Silvio Sulichin is an individual *sui juris* who, on information and belief, resides at 1655 N.E. 145th Street, Miami, Florida.

6.      Minerva Arboleya is an individual *sui juris* who, on information and belief, resides at 1655 N.E. 145th Street, Miami, Florida.

7.      Defendants Sulichin and Arboleya are the conscious, moving, dominant and active force behind the wrongful acts complained of herein and behind the wrongful acts performed by ASI and Blumar, which wrongful acts they have engaged in for their own benefit and gain.

8.      Upon information and belief, ASI and Blumar are and were nothing more than sham corporations created by Defendants Sulichin and Arboleya to protect themselves from personal liability under contractual agreements entered into on their behalf, and merely to further themselves and not ASI or Blumar.

9.      Defendants Sulichin and Arboleya knew, or should have known, that ASI and/or Blumar were dissolved at all times relevant to the events described herein, but nonetheless continued to act, and represent to others, as though ASI and/or Blumar were authorized to conduct business in the State of Florida.

### JURISDICTION AND VENUE

10.      This Court has original subject matter jurisdiction over the federal trademark infringement, false designation of origin, violation of the Anti-Cybersquatting Consumer Protection Act, and declaratory judgment as to the owner of a trademark claims in this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332, 1338 and 1367, in that these claims arise under federal statutes.  The Court has jurisdiction over the claims brought under Florida common law pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

11.      The Court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193(1)(a)(1) and (2) because Defendants have extensive contacts with, conduct business in, and reside in, Florida.

12.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c).  Defendants reside and/or have their principal place of business in this District and have committed acts of trademark infringement, false designation of origin,

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

cybersquatting and breach of contract in this District and elsewhere in commerce.

## NATURE OF ACTION

13.     This is an action for injunctive and other relief under the Federal Trademark Act, 15 U.S.C. § 1051, *et seq.* ("Lanham Act"), particularly 15 U.S.C. § 1114, for trademark infringement, 15 U.S.C. § 1125(a) for false designation of origin, 15 U.S.C. § 1125(d) for violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), and 28 U.S.C. § 2201 for a declaratory as to ownership of a trademark.  Plaintiffs also assert claims under Florida Common Law for trademark infringement and breach of contract.

## FACTUAL BACKGROUND

14.     Fisher Island Holdings and its predecessors-in-interest have used the marks **FISHER ISLAND** and **FISHER ISLAND and Design** in connection with development, management, and brokerage of an internationally known private residential community that provides sophisticated, sumptuous and unique amenities to its residents under the marks.

15.     On June 24, 1997, the United States Patent and Trademark Office ("USPTO") issued to Island Developers, LTD ("IDL") U.S. Trademark Registration No. 2,073,672 for the mark **FISHER ISLAND and Design** in connection with "residential real estate management and real estate brokerage services."



This registration is in full force and effect and has been rendered "incontestable" within the meaning of 15 U.S.C. § 1065.  By assignment dated May 7, 1998, this registration is now owned

by Fisher Island Holdings.  A true and correct copy of this registration is attached as Exhibit A.

16.    On May 13, 1997, the USPTO issued to IDL U.S. Trademark Registration No. 2,061,165 for the mark **FISHER ISLAND CLUB and Design** in connection with "hotel and health resort services."



This registration is in full force and effect and has been rendered "incontestable" within the meaning of 15 U.S.C. § 1065.  By assignment dated May 7, 1998, this registration is now owned by Fisher Island Holdings.  A true and correct copy of this registration is attached as Exhibit B.

17.    IDL, Fisher Island Holding's predecessor, first used **FISHER ISLAND and Design** and **FISHER ISLAND CLUB and Design** (collectively the "FISHER ISLAND Registered Marks") in interstate commerce at least as early as August 31, 1984.  The FISHER ISLAND Registered Marks are distinctive.

18.    In addition to the FISHER ISLAND Registered Marks, one or both of Plaintiffs, and their predecessors in interest, have used and publicized goods and services offered by the Plaintiffs under marks including, without limitation, FISHER ISLAND, FISHER ISLAND CLUB, FISHER ISLAND MAGAZINE, among other FISHER ISLAND marks (collectively the "FISHER ISLAND Unregistered Marks," and together with the FISHER ISLAND Registered Marks, the "FISHER ISLAND Marks").  The FISHER ISLAND Marks are distinctive.

19.    On June 1, 1993, IDL and Fisher Island Club entered into a License Agreement ("License Agreement") granting Fisher Island Club a license to use the FISHER ISLAND Marks

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

in conjunction with the operation and promotion of Fisher Island Club.

20.     Fisher Island Club operates and promotes the Fisher Island Club, which provides golf, tennis, spa/fitness, beach, swimming and social facilities and operates in conjunction with Fisher Island Holdings to sell memberships in the Club.

21.     IDL assigned its interest in the FISHER ISLAND Marks, including the FISHER ISLAND Registered Marks, to Fisher Island Holdings on or about May 17, 1998.

22.     On June 14, 2007, Fisher Island Holdings and Fisher Island Club entered into a First Amendment to License Agreement ("the Amendment").  The Amendment provided that Fisher Island Club use the mark in a "form and manner which will preserve the integrity and good taste with which the [FISHER ISLAND Marks] ha[ve] come to be associated."

23.     Plaintiffs have registered or protected internet domain names using the FISHER ISLAND Marks, including *www.fisherisland.com*, which is registered by Fisher Island Holdings.

24.     As a result of Plaintiffs' long-term and widespread use of the FISHER ISLAND Marks in the United States, the devotion of substantial time, effort and resources to the development, advertising and promotion of the distinctive FISHER ISLAND Marks, together with unsolicited favorable reviews and acclaim, the public has come to recognize and rely upon the FISHER ISLAND Marks as an indication of high quality.  The FISHER ISLAND Marks enjoy a high degree of consumer recognition and goodwill, and have become well known marks.

## DEFENDANT'S INFRINGING ACTIVITIES

25.     On March 29, 2011, Fisher Island Club and Defendants Sulichin and Arboleya entered into the Fisher Island Club Magazine Publishing Agreement ("Publishing Agreement"), a true and correct copy of which is attached as Exhibit C. Sulichin and Arboleya signed on behalf of "ASI Marketing LLC," an unregistered and/or non-existent entity.  On information and belief,

Sulichin and Arboleya intended to sign the Publishing Agreement on behalf of ASI.

26.    Prior to entering into that Publishing Agreement, Plaintiffs or their successors-in-interest had published FISHER ISLAND MAGAZINE by and through other publishing organizations located in South Florida.

27.    Unbeknownst to Plaintiffs, at the time of the Publishing Agreement, ASI was administratively dissolved, and had been dissolved since 2006, for failure to file its annual reports.  Based on the Florida Secretary of State records publicly available online, ASI has not been reinstated as a limited liability company in good standing with the State of Florida as of the date of this filing.

28.    On information and belief, the directors and/or officers of ASI, including Defendants Sulichin and Arboleya, were aware or should have been aware that ASI was dissolved at the time of the execution of the Publishing Agreement.  Thus, Sulichin and Arboleya are personally liable, as an officer/director and registered agent/manager respectively, for all damages arising from ASI's breach of the Publishing Agreement and/or all damages related to the Publishing Agreement.

29.    The Publishing Agreement provided that ASI would publish and distribute at least 30,000 copies of FISHER ISLAND CLUB MAGAZINE on a quarterly basis from August 2011 through August 2016.

30.    Through consent of the parties to that agreement, Fisher Island Club and ASI, the name of the published magazine was FISHER ISLAND MAGAZINE.

31.    The FISHER ISLAND MAGAZINE would report on the functions of the Fisher Island Club and was intended as a marketing and promotional tool for the Fisher Island Club and Fisher Island amenities, activities, and community generally.

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

32.     Pursuant to the terms of the Publishing Agreement, ASI was permitted to use the name and marks FISHER ISLAND and FISHER ISLAND MAGAZINE in connection with the magazine publication only.

33.     Notwithstanding the foregoing sub-license, Defendant Sulichin surreptitiously filed a federal trademark registration in his own name individually for the mark **FISHER ISLAND MAGAZINE** on or about September 4, 2012.   He did so without the consent, permission or authority of Plaintiffs.  A copy of the filing is attached as Exhibit D.

34.     On March 26, 2013, the USPTO issued to Defendant Sulichin, U.S. Trademark Supplemental Registration No. 4,310,865 for the mark **FISHER ISLAND MAGAZINE** in connection with "magazines featuring luxury lifestyle details, namely, travel, art, cuisine, fashion, and entertainment," a registration to which he was not entitled.   A copy of the registration is attached as Exhibit E.

35.     On or about April 1, 2014, based on its understanding that ASI was not publishing 30,000 copies of FISHER ISLAND MAGAZINE as required under the Publishing Agreement and ASI's failure to provide documentation of the publication and distribution, among other reasons, Fisher Island Club sent a letter to ASI, Arboleya and Sulichin terminating the Publishing Agreement for non-performance.  Specifically, Fisher Island Club cited Defendants' failure to prove compliance with the quota as well as other defaults.   Termination was effective immediately following the Spring 2014 issue.   Fisher Island Club also demanded that ASI, Arboleya and Sulichin discontinue their use of the "name and designs, including logo and layout, names of columns, departments, and folios" after the Spring 2014 issue.   A copy of the termination letter is attached as Exhibit F.

36.     Notwithstanding the April 1, 2014 termination letter, Defendants continued to sell

advertising for future issues of the FISHER ISLAND MAGAZINE and, on information and belief, published a Summer 2014 issue of FISHER ISLAND MAGAZINE.

37.     On page 12 of the Summer 2014 issue of FISHER ISLAND MAGAZINE, the Defendants included the following disclaimer: "Fisher Island Magazine. . . is in no way affiliated with the Fisher Island Club."  There was no disclaimer in relation to Fisher Island Holdings. This disclaimer appears adjacent to cover photos of past editions of FISHER ISLAND MAGAZINE that were expressly affiliated with Fisher Island Club, thus causing a significant likelihood of confusion as to whether or not the Summer 2014 issue is associated with Plaintiffs and/or the FISHER ISLAND Marks.

38.     On July 10, 2014, Fisher Island Club sent a Cease & Desist letter to Sulichin, Arboleya and ASI addressing their continuing violation of the Publishing Agreement, and demanding that they immediately cease and desist from "publication of the magazine under the name Fisher Island Magazine or any derivative name thereof" and from using the associated domain name.  A true and correct copy of the letter is attached as Exhibit G.

39.     Fisher Island Club did not receive a response to its July 10, 2014 letter.

40.     On or about August 28, 2014, Defendants published a Fall 2014 issue, changing the name from FISHER ISLAND MAGAZINE to FISHER MAGAZINE.  FISHER MAGAZINE is derivative of FISHER ISLAND MAGAZINE and is likely to cause confusion amongst the public as to the origin, source or affiliation of FISHER MAGAZINE.  FISHER MAGAZINE is, stylistically, virtually identical to FISHER ISLAND MAGAZINE in that it utilizes the same layout, names of columns, departments, folios, writing staff, quarterly publishing schedule and title font, creating a likelihood of confusion as to the relation between FISHER MAGAZINE and FISHER ISLAND MAGAZINE, Fisher Island Club, Fisher Island Holdings and/or the FISHER ISLAND Marks.  A copy of the cover of

FISHER MAGAZINE and FISHER ISLAND MAGAZINE are attached as Exhibit H.

41.     On page 12 of the Fall 2014 issue of the Magazine, Defendants included the following disclaimer: "Fisher Magazine . . . is in no way affiliated with the Fisher Island Club." Again, there was no disclaimer in relation to Fisher Island Holdings.  On page 95 of the Fall 2014 issue is a layout of past issues of FISHER ISLAND MAGAZINE, clearly intended to relate FISHER MAGAZINE to FISHER ISLAND MAGAZINE, Plaintiffs, and/or the FISHER ISLAND Marks.

42.     Defendants' continued publishing and promotion of FISHER ISLAND MAGAZINE and FISHER MAGAZINE, long after the date of termination of the Publishing Agreement, is a breach of the Publishing Agreement.

43.     On information and belief, Defendants are marketing and offering FISHER MAGAZINE through the same channels of distribution and to the same target customers as the Club's FISHER ISLAND MAGAZINE.

44.     On information and belief, Defendants continue to sell advertising to the same businesses who previously advertised with FISHER ISLAND MAGAZINE.

45.     Plaintiffs have not consented to, sponsored, endorsed or approved of Defendants' use of the FISHER ISLAND Marks or any variations thereof in connection with the marketing or sale of the Magazine.

46.     Defendants' actions infringe Plaintiff Fisher Island Holdings' FISHER ISLAND Marks and Plaintiff Fisher Island Club's rights under the Publishing Agreement, and constitute false designation as to the origin of Defendants' products and services.

47.     Defendants' actions have impaired Plaintiff Fisher Island Holdings' rights in and to the FISHER ISLAND Marks and Plaintiffs' ability to publish FISHER ISLAND MAGAZINE

48.     Upon    information    and    belief,    Sulichin    is    the    registrant    of

www.fisherislandmagazine.com   and   www.fishermagazine.com   (collectively   the   "Domain

Names").  The Domain Names host the website for FISHER MAGAZINE (the "Website").

49.     The Domain Names are identical or confusingly similar to the distinctive FISHER

ISLAND Marks.

50.     The Website includes links to view past issues of FISHER ISLAND MAGAZINE,

creating further confusion as to the relationship between FISHER MAGAZINE and FISHER ISLAND

MAGAZINE, Fisher Island Club, Fisher Island Holdings, and the FISHER ISLAND Marks.  The

Website causes a likelihood of confusion among consumers and advertisers regarding the source

and affiliation of FISHER MAGAZINE and is likely to mislead and deceive the public.

51.     On information and belief, Defendants know or should know that the continued

use of the Domain Names serve to confuse and mislead both consumers and advertisers, who are

lured to the Website by Defendants for the purpose of promoting and selling FISHER MAGAZINE

and advertising in FISHER MAGAZINE.

52.     Having received no response to its July 10, 2014 letter, and discovering that

Defendants published the Fall 2014 issue and continued to use the Domain Names, Plaintiffs sent

a second cease and desist letter on November 24, 2014 (a copy of which is attached as Exhibit I),

enclosing a draft copy of this complaint and demanding that Defendants immediately:

      a.    Cease use of FISHER ISLAND MAGAZINE, FISHER MAGAZINE and any other derivative or misspelling thereof in print or online, including in social media;

      b.    Promptly assign Federal Trademark Supplemental Registration for **FISHER ISLAND MAGAZINE** (U.S. Supp. Reg. No. 4,310,865) to Fisher Island Club;

      c.    Cease   use   of   www.fishermagazine.com   and www.fisherislandmagazine.com and transfer the domain names to Fisher Island Club;

d.      Advise Fisher Island Club of each use you are currently making of "Fisher Island Magazine," "Fisher Magazine" and any derivative or misspelling thereof in any format. This will include, for example,  signage, business cards, printed or other advertising and promotional materials, other business stationery, and other materials you have in your possession, or on order.  It will also include any online and print advertising such as Yellow Pages and other directory advertising, social media pages, other Internet promotions, etc.;

e.      Remove all references to "Fisher," "Fisher Island" and any derivative or misspelling thereof from all email addresses;

f.      Make no further use of "Fisher" or "Fisher Island" for any purpose in connection with your business; and

g.      Cease all use of the Fisher Island Club's proprietary contact list as Defendants' mailing list or otherwise.

53.     In response to the November 24 letter, counsel for Defendants contacted Plaintiffs to ask for additional time to respond, up to and including December 12, 2014.  Said extension was granted by Plaintiffs.

54.     Plaintiffs' counsel and Defendants' counsel conferred to try and resolve the issues without the need for judicial intervention, but Defendants refused to cease infringing Plaintiffs' rights, thus Plaintiffs have been forced to file this Complaint.

55.     As of the date of this filing, Defendants continue to use FISHER MAGAZINE, the Domain Names, and Website, all of which include the FISHER ISLAND Mark(s) and/or variations thereof, without the authorization, consent, or permission of Plaintiffs.

56.     Defendants' failure to comply with Plaintiffs' demand demonstrates a deliberate intent to continue wrongfully competing with Plaintiffs and to willfully infringe on Plaintiffs' rights in the FISHER ISLAND Marks.  On information and belief, Defendants' actions are willful and reflect intent to confuse consumers, advertisers, and the public, and to profit from the goodwill and consumer recognition associated with the FISHER ISLAND Marks.

57.

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

<u>COUNT I</u>
<u>FEDERAL TRADEMARK INFRINGEMENT</u>
<u>15 U.S.C. § 1114</u>
<u>(AGAINST ALL DEFENDANTS)</u>

58.     The allegations of paragraphs 1 through 56 of the Complaint are repeated and realleged as though fully set forth herein.

59.     The actions of Defendants described above, including their unauthorized use of the FISHER ISLAND Registered Marks and/or confusingly similar variations thereof, in commerce, to advertise, promote, market and sell their products throughout the United States, including Florida, constitute trademark infringement in violation of the Lanham Trademark Act, including but not limited to 15 U.S.C. § 1114(1).

60.     The infringing products and services that Defendants have and are continuing to offer, advertise, market and/or sell are likely to cause confusion, mistake, or deception as to their source, origin, or authenticity.

61.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the infringing products and services that Defendants are advertising, marketing and/or selling originate with or are authorized by Plaintiffs, to the damage and harm of Plaintiffs and the public.

62.     Upon information and belief, Defendants offered, advertised, marketed and/or sold infringing products and services intentionally, and with the purposes of willfully misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the infringing products and services, and of trading upon Plaintiffs' business reputations.

63.     As a result of their wrongful conduct, Defendants are liable to Plaintiffs for trademark infringement under 15 U.S.C. § 1114.

64.     Plaintiffs have been injured by Defendants' conduct and are entitled to recover

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

damages, which include any and all profits Defendants have made as a result of their wrongful conduct under 15 U.S.C. § 1117(a).

65.     Plaintiffs are also entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) and to an order compelling the impounding of all infringing materials being offered, advertised, marketed and/or sold by Defendants.

66.     Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the FISHER ISLAND Registered Marks are  unique and valuable properties which have no readily determinable market value; (b) Defendants' infringement constitutes harm to Plaintiffs such that Plaintiffs could not be made whole by any monetary award; (c) if the Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing products; and (d) Defendants' wrongful conduct, and the resulting damage to Plaintiffs is continuing.

67.     This case is exceptional, as a result of which Plaintiffs are entitled to recover their attorney's fees and costs of suit under 15 U.S.C. § 1117.

68.     The actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the FISHER ISLAND Registered Marks and injury to Plaintiffs' business.  Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(A)
## (AGAINST ALL DEFENDANTS)

69.     The allegations of paragraphs 1 through 56 of the Complaint are repeated and realleged as through fully set forth herein.

70.     This is an action for unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

71.     Defendants' publication of FISHER MAGAZINE complained of herein is confusingly similar to Plaintiffs' FISHER ISLAND Marks in sound, appearance, and commercial impression.  Such use unlawfully exploits the commercial value Plaintiffs have developed in the FISHER ISLAND Marks, and is likely to cause confusion or mistake as to the origin of FISHER MAGAZINE.

72.     Defendants' FISHER MAGAZINE is clearly derivative of FISHER ISLAND MAGAZINE and is likely to cause confusion amongst the public as to the origin of FISHER MAGAZINE.

73.     FISHER MAGAZINE is similar to FISHER ISLAND MAGAZINE in that it utilizes the same layout, names of columns, departments, folios, writing staff, quarterly publishing schedule and title font, creating further likelihood of confusion as to the relationship between FISHER MAGAZINE and FISHER ISLAND MAGAZINE, Fisher Island Club, Fisher Island Holdings, and the FISHER ISLAND Marks.

74.     Upon information and belief, Both FISHER MAGAZINE and FISHER ISLAND MAGAZINE having been offered through the same channels of distribution and to the same target customers and advertisers.

75.     Defendants' use of FISHER MAGAZINE is likely to cause confusion, mistake, and deception as to the affiliation of Defendants and FISHER MAGAZINE to Plaintiffs and FISHER

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

ISLAND MAGAZINE.

76.     Defendants' use of FISHER MAGAZINE is without the authorization, consent or approval of the Plaintiffs.

77.     Defendants' continued use of FISHER MAGAZINE is likely to cause and is causing Plaintiffs substantial and irreparable injury, depriving Plaintiffs of their right to determine the manner in which the FISHER ISLAND Marks are represented to the general public.

78.     Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the FISHER ISLAND Marks are unique and valuable properties which have no readily determinable market value; (b) Defendants' false designation of origin constitutes harm to Plaintiffs such that Plaintiffs could not be made whole by any monetary award; (c) if the Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing products; and (d) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing.

79.     This case is exceptional and the Plaintiffs are entitled to recover their attorney's fees and costs of suit under 15 U.S.C. § 1117.

80.     The actions of Defendants, if not enjoined, will continue.  Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the FISHER ISLAND Marks and injury to Plaintiffs' business.  Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
## VIOLATION OF ANTI CYBERSQUATTING CONSUMER PROTECTION ACT
## 15 U.S.C. § 1125(D)
## (AGAINST SULICHIN ONLY)

81.     The allegations of paragraphs 1 through 56 of the Complaint are repeated and reentered as though fully set forth herein.

82.     Plaintiffs' FISHER ISLAND Marks were distinctive at the time of the registration of *www.fisherislandmagazine.com* and *www.fishermagazine.com* ("the Domain Names").

83.     The Domain Names are identical or confusingly similar to the distinctive FISHER ISLAND Marks, owned by Plaintiffs.

84.     Upon information and belief, Sulichin had full knowledge of the FISHER ISLAND Marks and constructive notice of the FISHER ISLAND Registered Marks when Sulichin secured registration for the Domain Names.

85.     Sulichin has trafficked in and used the Domain Names with the bad faith intent to profit from the FISHER ISLAND Marks after the termination of the Publishing Agreement.

86.     Upon information and belief, the Domain Names have been used by Sulichin with the bad faith intent to reap the benefit of the goodwill in the FISHER ISLAND Marks, to divert customers to the Domain Names for his own commercial gain, and to otherwise profit from unauthorized use of the FISHER ISLAND Marks.

87.     The aforesaid acts and conduct constitute cyber-piracy in violation of the ACPA, Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

88.     The unauthorized continued use of the Domain Names is causing immediate and irreparable injury to the Plaintiffs and to the goodwill and reputation of the FISHER ISLAND Marks, and will continue to damage Plaintiffs and the FISHER ISLAND Marks unless the Court enjoins such use and transfers registration of the Domain Names to Plaintiffs.

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

89.     Plaintiffs have been damaged by Sulichin's conduct as alleged above in an amount and manner not yet known.

### COUNT IV
### ACTION FOR DECLARATORY JUDGMENT
### OF OWNERSHIP OF THE MARK FISHER ISLAND MAGAZINE
### (AGAINST SULICHIN ONLY)

90.     The allegations of paragraphs 1 through 56 of the Complaint are repeated and realleged as though fully set forth herein.

91.     This is an action for a declaratory judgment against Sulichin pursuant to 28 U.S.C. §§ 2201 and 2202.

92.     Sulichin applied for and received a Supplemental Federal Trademark Registration for **FISHER ISLAND MAGAZINE** (Reg. No. 4,310,865).

93.     At the time of filing his application, Sulichin claimed to be the owner of the mark **FISHER ISLAND MAGAZINE.**

94.     Sulichin was not the owner, has never been the owner, and knew that he was not the owner of the mark **FISHER ISLAND MAGAZINE**, nor any other of the FISHER ISLAND Marks.

95.     Fisher Island Holdings is the proper and lawful owner of the FISHER ISLAND Marks, including **FISHER ISLAND MAGAZINE**.

96.     Sulichin evidently accepted that he is not the owner of the mark **FISHER ISLAND MAGAZINE**, as he changed the name of his magazine from FISHER ISLAND MAGAZINE to FISHER MAGAZINE upon receipt of the July 10, 2014 letter from Fisher Island Club.

97.     The competing assertions of ownership of the mark, **FISHER ISLAND MAGAZINE,** give rise to actual controversy between the parties requiring a declaration of the Court as to their respective rights in and to **FISHER ISLAND MAGAZINE**.

98.     Sulichin's assertion of ownership of the mark, **FISHER ISLAND MAGAZINE**, adversely affects the Plaintiffs and will continue to adversely affect Plaintiffs because, until the Court makes a determination as to the ownership of the mark, Plaintiffs will be in doubt as to their right to continue to use the trademark **FISHER ISLAND MAGAZINE**.

99.     Sulichin's intentional misrepresentation to the USPTO that he owned the mark **FISHER ISLAND MAGAZINE** constitutes fraud on the USPTO.

100.    Additionally, pursuant to 15 U.S.C. §§ 1064(3) and 1119, Sulichin's registration should be canceled as it was obtained fraudulently.

### COUNT V
### TRADEMARK INFRINGEMENT UNDER FLORIDA COMMON LAW
### (AGAINST ALL DEFENDANTS)

101.    The allegations of paragraphs 1 through 56 of the Complaint are repeated and realleged as though fully set forth herein.

102.    Fisher Island Holdings, the proper and lawful owners of the FISHER ISLAND Marks, including but not limited to, **FISHER ISLAND MAGAZINE**, and Plaintiffs, or their predecessors in interest, have been using the FISHER ISLAND Marks since at least 1984.

103.    Plaintiffs have continuously advertised, promoted, offered for sale and sold their goods and services, including the publication of a magazine, in the State of Florida under the FISHER ISLAND Marks.

104.    Plaintiffs' FISHER ISLAND Marks are distinctive and have acquired secondary meaning.

105.    Defendants have offered, or caused to be advertised, promoted, sold and offered for sale, their magazine under the FISHER ISLAND Marks and or confusingly similar variations thereof.

106.     The acts of Defendants complained of herein are in violation of the common law of the State of Florida, in that Defendants' use in Florida of the FISHER ISLAND Marks and/or confusingly similar variations thereof has caused and will continue to cause a likelihood of confusion among the public that Defendants' goods and services are affiliated with, associated with, or otherwise approved of by Plaintiffs.

107.     As a result, Defendants have been, and are now being, unjustly enriched by their wrongful misappropriation of the FISHER ISLAND Marks and/or confusingly similar variations thereof and the goodwill symbolized by the FISHER ISLAND Marks.

108.     By reason of the acts of Defendants herein alleged, Plaintiffs have suffered, and unless Defendants are restrained from continuing their wrongful acts, will continue to suffer, serious and irreparable harm for which it has no adequate remedy at law.

### COUNT VI
### BREACH OF CONTRACT UNDER FLORIDA COMMON LAW
### (AGAINST SULICHIN, ARBOLEYA, AND ASI)

109.     The allegations of paragraphs 1 through 56 of the Complaint are repeated and realleged as though fully set forth herein.

110.     The Fisher Island Club entered into the Publishing Agreement as alleged above.

111.     Defendants materially breached the Publishing Agreement by failing to perform the duties and obligations pursuant to the terms thereof, as more particularly set forth above.

112.     ASI was nothing more than a sham corporation created, and not maintained, by Sulichin and Arboleya to protect themselves from personal liability for their involvement in contractual agreements, and merely to further themselves and not ASI.

113.     Upon information and belief, Sulichin and Arboleya exercised, and continue to exercise, complete domination of ASI in respect to the Publishing Agreement.

114.     Sulichin and Arboleya knew, or should have known, that ASI was dissolved at the time it entered into the Publishing Agreement, but nonetheless purported to enter into the Publishing Agreement on behalf of ASI and/or "ASI Marketing LLC" and thereafter breached that Agreement.

115.     Upon information and belief, Sulichin knew that ASI was dissolved at the time he filed an application with the USPTO to register the mark "FISHER ISLAND MAGAZINE."

116.     For the reasons set forth above, Sulichin and Arboleya are personally liable for ASI's breach of the publishing agreement.

117.     As a direct and proximate result of Defendants' breaches, Fisher Island Club has suffered, and continues to suffer, substantial damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.     That Defendants and their agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them or their successors or assigns of any of them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

    a.   Using the FISHER ISLAND Marks, or any reproduction, counterfeit, copy, derivation or colorable imitation of said marks, including but not limited to FISHER ISLAND MAGAZINE and FISHER MAGAZINE, in connection with the importation, sale, offer for sale, and/or distribution of products, including but not limited to magazines and the sale of advertising for magazines;

    b.   Using the FISHER ISLAND Marks or any reproduction, counterfeit, copy, derivation or colorable imitation of the same, including but not limited to FISHER

ISLAND MAGAZINE and FISHER MAGAZINE, in any manner likely to cause others to believe that Defendants' product or services, including but not limited to magazines and the sale of advertising for magazines, are connected with Plaintiffs or are genuine;

c. Passing-off, inducing, or enabling others to sell or pass off any merchandise or service, including but not limited to magazines and the sale of advertising for magazines, which is not genuine as and for genuine merchandise or services;

d. Making any false or misleading statements regarding Plaintiffs or their goods or services, or the relationship between Plaintiffs or the FISHER ISLAND Marks on the one hand, and Defendants, on the other hand;

e. Committing any other acts calculated to cause purchasers, advertisers, or the general public to believe that Defendants' products or services, including but not limited to magazines and the sale of advertising for magazines, are related to Plaintiffs' products or services;

f. Shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of in any manner packaging falsely bearing the FISHER ISLAND Marks or any reproduction, counterfeit, copy, or colorable imitation of the same; and

g. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (f).

2.      That Defendants and any and all persons controlled by or acting in concert with Defendants be required to deliver to Plaintiffs for destruction all goods, packages, and any other

written or printed materials, including but not limited to Fisher Island Magazine, that bear or depict the FISHER ISLAND Marks or any reproduction, counterfeit, copy, or colorable imitation of the same, or that are otherwise in violation of this Court's order issued pursuant hereto, and all means for making the same;

3.      That Defendants be required to account to Plaintiffs for Defendants' profits from the sale of infringing products and services, and for such sum in addition thereto as the Court shall find just.

4.      That Plaintiffs be awarded all damages caused by Defendants' actions.

5.      That this case be found exceptional and Plaintiffs be awarded their attorney's fees pursuant to 15 U.S.C. § 1117(a).

6.      Pursuant to 15 U.S.C. § 1125(d)(1)(C) an order transferring ownership of the domain names *www.fisherislandmagazine.com* and *www.fishermagazine.com* (and any other domain names incorporating "Fisher" or any other derivative or misspelling thereof) to Plaintiffs.

7.      An order transferring ownership of all FISHER MAGAZINE and FISHER ISLAND MAGAZINE social media accounts to Plaintiffs.

8.      Pursuant to 15 U.S.C. § 1117(d), an award of statutory damages for Defendants' registration and use of *www.fisherislandmagazine.com* and *www.fishermagazine.com*.

9.      Pursuant to 28 U.S.C. § 2201, that the Court enters judgment declaring that Sulichin is not the owner of the mark **FISHER ISLAND MAGAZINE** at the time he applied for Trademark Reg. No. 4,310,865.

10.      Pursuant to 28 U.S.C. § 2201, that the Court enters judgment declaring that Sulichin knew he was not the owner of the mark **FISHER ISLAND MAGAZINE** at the time he applied for Trademark Reg. No. 4,310,865.

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

11.     Pursuant to 15 U.S.C. §§ 1064(3) and 1119, that the Court orders Trademark Reg. No. 4,310,865 canceled as being obtained fraudulently by Sulichin, and that said order be certified by the Court to the Director of the USPTO .

12.     That Plaintiffs have and recover the taxable costs of this civil action, including reasonable attorney's fees and interest.

13.     That Defendants be ordered to file with the Court and serve upon Plaintiffs, within thirty (30) days after the service of the injunction upon Defendants, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with such  injunction and judgment as may be entered pursuant to this Complaint.

14.     That Plaintiffs have such other and further relief as this Court deems just and proper.

*[signature on following page]*

Date:   December 16, 2014                    Respectfully submitted,

**LOTT & FISCHER, PL**

**s/ Leslie J. Lott**
Leslie J. Lott
Florida Bar No. 182196
E-mail: ljlott@lottfischer.com
Adam Diamond
Florida Bar No. 091008
E-mail: adiamond@lottfischer.com
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134
Telephone: (305) 448-7089
Facsimile: (305) 446-6191
and
Michael D. Katz
Florida Bar No. 1278731
Aaron Cohn
Florida Bar No. 0095552
E-mail: mdk@katzbarron.com
**KATZ BARRON SQUITERO FAUST**
2699 S. Bayshore Drive, Seventh Floor
Miami, FL  33133-5408
Telephone:  (305) 856-2444
Facsimile:  (305) 285-9227
*Attorneys for Plaintiff Fisher Island Club, Inc.*

**s/ John F. O'Sullivan**
John F. O'Sullivan
Florida Bar No.
E-mail: john.osullivan@hoganlovells.com
Clayton P. Solomon
Florida Bar No.
E-mail: Clayton.solomon@hogallovells.com
**HOGAN LOVELLS US LLP**
600 Brickell Avenue, Suite 2700
Miami, FL  33131
Telephone: (305) 459-6672
Facsimile: (305) 459-6550
*Attorneys for Plaintiff Fisher Island Holdings, LLC*