United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Fisher Island Club, Inc. and Fisher Island Holdings, LLC, Plaintiffs ) ) ) v. ) ) Arboleya Sulichin International ) Marketing, LLC, *and others*, ) Defendants ) | Civil Action No. 14-24741-Civ-Scola |

**Order on Plaintiffs' Motion for Preliminary Injunction
and Motion for Temporary Restraining Order**

  THIS MATTER is before the Court on Plaintiffs' Motion for Preliminary Injunction, (ECF No. 16), and Plaintiffs' Motion for Temporary Restraining Order. (ECF No. 17).  The Court considered the Motions, the evidence presented, and the arguments of counsel at the February 20, 2015 hearing.  Although the Court formally noticed that hearing only on the Motion for a Temporary Restraining Order (due to a scrivener's error), both the Court and the parties proceeded as if it were a hearing on both Motions (for preliminary injunction and temporary restraining order).  The parties' briefing confirms this understanding.  (*See e.g.*, Defs.' Omnibus Resp. to Mots. for Prelim. Inj. & TRO, ECF No. 21.)  After full consideration, the Court **grants** Plaintiffs' Motion for Preliminary Injunction and **grants** Plaintiffs' Motion for Temporary Restraining Order.

1. **Background.**

  Island Developers, Ltd. ("IDL") began using the marks FISHER ISLAND and FISHER ISLAND CLUB (the "Fisher Island Marks") in commerce in 1984, and the marks were eventually licensed to Fisher Island Club.  Years later, in 1997, the USPTO issued registrations to IDL for both marks.  After registration, IDL assigned both marks to Fisher Island Holdings, which then executed an amendment to the license agreement with Fisher Island Club.  Presently, Fisher Island Holdings owns the marks and Fisher Island Club uses them as a licensee.

  In 2011, more than a decade after Fisher Island Holdings received the Fisher Island Marks, Plaintiff Fisher Island Club entered into the Fisher Island Club Magazine Publishing Agreement (the "Publishing Agreement") with Defendants Sulichin and Arboleya, who signed on behalf of ASI Marketing, LLC.  The Publishing Agreement required Defendants to, among other things,

publish 30,000 copies of Fisher Island Magazine in quarterly installments. Approximately a year into the Publishing Agreement's 5-year term, Sulichin applied to the USPTO for registration of the FISHER ISLAND MAGAZINE mark. Sulichin's application was granted on March 26, 2013.

Citing non-performance with the Publishing Agreement—specifically, failure to publish and distribute the required 30,000 copies of Fisher Island Magazine and various quality control issues—Plaintiff Fisher Island Club terminated the Publishing Agreement on April 1, 2014, to be effective immediately following publication of the magazine's Spring 2014 issue. Defendants, however, did not stop after the Spring issue. They continued on and published a Summer 2014 issue. They also published a Fall 2014 issue, but, this time, changed the name of the magazine to Fisher Magazine. Defendants plan to publish a Spring 2015 issue of their magazine in a matter of weeks. Plaintiffs allege that Defendants' continued use of the FISHER ISLAND MAGAZINE and FISHER MAGAZINE marks infringes the FISHER ISLAND and FISHER ISLAND CLUB marks.

**2.     Legal Standard.**

The standards for obtaining a preliminary injunction and a temporary restraining order are the same. *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000), *aff'd* 2000 WL 1781946 (11th Cir. 2000). To prevail on their Motions, Plaintiffs must establish four elements: (1) substantial likelihood of success on the merits; (2) that they would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury outweighs whatever damage the injunction may cause to Defendants; and (4) that the injunction, if issued, would not be adverse to the public interest. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001).

**3.     Discussion.**

   **A.     Plaintiffs' likelihood of success on the merits.**

Plaintiffs have demonstrated their likelihood of success on the merits of their trademark claims. To prevail on those claims, Plaintiffs must prove (1) the Fisher Island Marks are valid, protectable marks; and (2) Defendants' use of the FISHER ISLAND MAGAZINE and FISHER MAGAZINE marks is likely to cause consumer confusion. *See Tracfone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1224 (S.D. Fla. 2012) (Lenard, J.).

The first element is easily shown: Plaintiffs' marks have been used since 1984, (*See* Reg. No. 2,073,672, ECF No. 16-2; Reg. No. 2,061,165, ECF No. 16-3), and were registered with the USPTO in 1997. (*See id.*) "The Eleventh Circuit strongly presumes registered marks to be valid." *Tracfone Wireless*, 883 F.

Supp. 2d at 1224. Since the marks have been used continuously for more than five years, they are also incontestable. *See* 15 U.S.C. § 1065. And if "a registered mark is incontestable, its validity, ownership, and exclusive right of use are conclusive and irrebuttable, subject only to a limited number of defenses." *Tracfone Wireless*, 883 F. Supp. 2d at 1224. Plaintiffs have thus shown that their marks are valid and enforceable. The Court must next analyze whether Defendants' use of the FISHER ISLAND MAGAZINE and FISHER MAGAZINE marks is likely to lead to consumer confusion.

Seven factors inform the likelihood of confusion analysis: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the products or services offered; (4) the identity of purchasers and similarity of retail outlets; (5) the similarity of advertising campaigns; (6) the defendant's intent; and (7) instances of actual confusion. *Safeway Stores, Inc. v. Safeway Discount Drugs*, 675 F.2d 1160, 1164 (11th Cir. 1982). After conducting its analysis, the Court finds that a likelihood of consumer confusion exists.

Regarding the first factor, marks are classified, in order of increasing strength, as generic, descriptive, arbitrary, or fanciful. *It's A 10, Inc. v. Beauty Elite Group, Inc.*, 932 F. Supp. 2d 1325, 1331 (S.D. Fla. 2013) (Cohn, J.) Stronger marks generally receive greater protection than weaker marks. *Id.* (citation omitted). As explained by the Eleventh Circuit:

> Generic marks refer to a particular genus or class of which an individual [product] is but a member; such marks may never receive . . . protection. Descriptive marks directly describe a characteristic or quality of the service [or product], and can only be protected if they have acquired "secondary meaning." "Vision Center," when used to describe a place to purchase eyeglasses, would be a descriptive name. Suggestive marks subtly connote something about the [product] so that a consumer could use his or her imagination and determine the nature of the [product]. The term "Penguin" would be suggestive of refrigerators . . . . An arbitrary or fanciful mark is a word in common usage applied to a [product] unrelated to its meaning; "Sun Bank" is such an arbitrary or fanciful mark when applied to banking services.

*Id.* (citation omitted). Fisher Island has "been the home of numerous high-profile celebrities and individuals, and [Fisher Island Club] counts equally prosperous and high profile individuals among its members," say Plaintiffs. (Lackner Decl. ¶ 6, ECF No. 16-1.) For those reasons, "Fisher Island and Fisher Island Club have become associated with the highest levels of affluence and influence[.]" (*Id.* at ¶ 7.) The FISHER ISLAND and FISHER ISLAND CLUB marks connote this affluence and influence and are thus suggestive marks entitled to protection.

Moving on to the next factor, the similarity of the marks is determined by considering their overall impression, including their appearance, sound, and meaning. *It's A 10, Inc.*, 932 F. Supp. 2d at 1331. Here, the marks are very similar. Indeed, Plaintiffs' FISHER ISLAND and FISHER ISLAND CLUB marks have wording that overlap significantly with Defendants' FISHER ISLAND MAGAZINE and FISHER MAGAZINE marks. Of course, when spoken, the marks sound very much alike. The effect of the marks is also the same: evoking luxurious thoughts from consumers.

Next in the analysis come the similarity of the products or services offered; the identity of purchasers and retail outlets; and the similarity of advertising campaigns. *Safeway Stores, Inc.*, 675 F.2d at 1164. The parties' products and services are similar in that they all relate to the sale and promotion of luxury goods and lifestyles. And beginning in Spring 2015, Plaintiffs will use their Fisher Island Marks to publish their own luxury magazine. Similarities extend to the next factors too. The parties offer their products to the same purchasers. Although the parties advertise in an area wider than Fisher Island's borders, its residents are one of their targets. Likewise, the parties use similar retail outlets and advertising campaigns to appeal to their upper-crust clientele.

The sixth factor is intent. It seems clear, based on the similarity of the marks, that Defendants intended to capitalize on the recognition of the Fisher Island name. Indeed, after the parties' dispute arose, Defendants changed their magazine's name, but made sure to keep the word "Fisher." Defendants could have called their magazine Island Magazine or anything else, but their desire to keep the word "Fisher" shows their intent to benefit from its recognition in the marketplace.

Turning to the final factor, the Court finds particularly compelling the actual confusion of those most knowledgeable of the Fisher Island brand. Indeed, both sides have introduced evidence that those familiar with the Fisher Island Marks and Fisher Island Magazine were confused. (*See* Mann Decl. ¶ 6, ECF No. 16-21) ("Some of our advertising clients have informed Executive that they were contacted by the Defendants, and were confused. They believed Defendants' Fisher Magazine was authorized by Fisher Island Club. When we contacted them, they thought they had already advertised with us."); (Arboleya Decl. ¶ 29, ECF No. 22) ("I have been in continuous contact with the same advertisers with whom I have traditionally worked for magazine ads since 2011. Some indicated an awareness of [Fisher Island Club's] attempts to solicit them for [its] new magazine. Some expressed confusion by [Fisher Island Club's] solicitations because they were accustomed to communicating exclusively with our staff and me."); ("E-Blast" sent Feb. 10, 2011, ECF No. 17-1) ("For our partners who have mistakenly signed contracts with the Fisher Island Club's

new magazine . . . ."); (*see also* Resp. to Mots., 18; ECF No. 21) (". . . Defendants do not deny that its advertisers are likely to be confused[.]").  The Eleventh Circuit notes that "confusion of actual customers of a business is worthy of substantial weight." *Safeway Stores, Inc.*, 675 F. 2d at 1167 (citation omitted).  This is precisely the case here.  Advertisers, presumably familiar with the parties' brands, were confused as to the identities and sources of the products offered by the parties. (*See* Mann Decl. ¶ 6, ECF No. 16-21; Arboleya Decl. ¶ 29, ECF No. 22.)

In sum, the Court finds that there is a substantial likelihood that a reasonable consumer would confuse the parties' products.

### B. Irreparable harm.

"Defendants' use of FISHER MAGAZINE is likely to cause irreparable damage to Plaintiffs' reputation because Plaintiffs would no longer control the quality and the content of the magazine," argue Plaintiffs. (ECF No. 16, 23.)  A poorly produced product by Defendant, Plaintiffs claim, will tarnish the reputation that Fisher Island has built for itself since 1984.  This concern is justified, as Plaintiffs already had quality control issues with Defendants. (*See* Letter dated Dec. 6, 2013, ECF No. 25-7) ("[Fisher Island Club's] relationship with ASI Marketing has been continually strained, often times experiencing your inability to comply with requests, a lack of communication or difficulty throughout the publishing process.  We have also been consistently dissatisfied with the quality of the magazine's design and layout, of which we have had no control."); (*see also*, Emails, ECF No. 25-9.)  The Court finds Plaintiffs' argument persuasive.  What's more, the Court already determined that there exists a high likelihood of consumer confusion and "'a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm.'" *It's a 10, Inc.*, 932 F. Supp. 2d at 1332.

### C. Balancing of harms.

The harm suffered by Plaintiffs without an injunction outweighs Defendants' potential harm if an injunction is entered, argue Plaintiffs.  The Court agrees.  Plaintiffs have spent substantial time and money developing the FISHER ISLAND and FISHER ISLAND CLUB marks since 1984.  On the other hand, Defendants have used the FISHER ISLAND MAGAZINE mark since 2011 and now use the FISHER MAGAZINE mark instead.  The Court finds that the harm caused by Plaintiffs' potential diminution of reputation outweighs the harm Defendants may suffer if they cannot publish a magazine under the Fisher Island Magazine or Fisher Magazine names. Defendants' injuries from

an injunction—if any—will take the form of lost advertising revenue. Plaintiffs' loss, however, cannot be quantified.

### D. The public interest.

"[T]he 'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion." *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (citation omitted). As previously described, the Court finds that it is likely that the public will be confused by Defendants' FISHER ISLAND MAGAZINE and FISHER MAGAZINE marks. The Court thus concludes that the public interest is served by a preliminary injunction.

### 4. Conclusion.

For the foregoing reasons, the Court **grants** Plaintiffs' Motion for Preliminary Injunction, (ECF No. 16), and **grants** Plaintiffs' Motion for Temporary Restraining Order. (ECF No. 17). Effective at **4:00 P.M. EST on February 23, 2015**, and continuing through the pendency of this action, the Defendants, including their affiliates, subsidiaries and related entities or companies, agents, servants, employees, owners, officers, assigns and successors in interest are hereby **enjoined and prohibited** from:

(A) Printing, publishing, or distributing any hard-copy or electronic publication under the marks FISHER ISLAND MAGAZINE or FISHER ISLAND CLUB;

(B) Making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants or Defendants' publications are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized or approved by Plaintiffs;

(C) Using any words or symbols which so resemble any of Plaintiffs' trademarks, trade or commercial names, or trade dress as to be likely to cause confusion, mistake, or deception, or in connection with the publication, distribution, sale, offering for sale, advertisement, or promotion of any product which is not authorized by Plaintiffs;

(D) Using any word, term, name, symbol, device, or combination thereof which causes or is likely to cause confusion, deception, or mistake as to the affiliation of Defendants or their products with Plaintiffs, or as to the origin of Defendants' products, or any false designation of origin, false or misleading description or representation of fact; and

(E) Further diluting or infringing Plaintiffs' rights in and to any of Plaintiffs' trademarks, trade or commercial names, or trade dress,

including but not limited to the FISHER ISLAND and FISHER ISLAND CLUB trademarks, or otherwise damaging Plaintiffs' goodwill or business reputation.

As a condition of this Order, and pursuant to Federal Rule of Civil Procedure 65(c), the Plaintiffs shall post a bond in the amount of **$15,000.00** by no later than **March 9, 2013**.

A copy of the Order shall be personally served upon Minerva Arboleya, 1655 N.E. 145th Street, Miami, Florida, 33181; Silvio Sulichin, 1655 N.E. 145th Street, Miami, Florida, 33181; Blumar Media, Inc., c/o Silvio Sulichin, 1655 N.E. 145th Street, Miami, Florida 33181; and Arboleya Sulichin International Marketing, LLC, c/o Minerva Arboleya, 1655 N.E. 145th Street, Miami, Florida 33181, or at such other locations at which they may be found and that such service shall be deemed good and sufficient notice of this Order.

**Done and ordered** in chambers, at Miami, Florida, on February 23, 2015.

_____
Robert N. Scola, Jr.
United States District Judge